1, 2, 3, 4, Jorge Paret-Ruiz v. United States Mr. Salas, good morning. Good morning. May it please the Court. The following findings are not contested. Mr., it's been granted all along through the trial, the civil trial, that Mr. Paret was willing to pretend he was an importer of cocaine in the hopes of getting money without working. That's a finding of the District Court, which is not contested. It was actually declared by Mr. Paret at trial that he lied about his, he feigned about his status as a drug importer, and he was never accused of that. But it's granted. We're not going to contest that. It's never been contested. It's also granted all along that Mr. Paret was happy to talk about his alleged exploits. The District Court made that finding, that conclusion, and that's not contested. Nobody has claimed otherwise. After all, the money, the government gave him money to talk about these supposed exploits. They would tour him on... I'm sorry, Counselor. Yeah. We got civil and criminal forfeiture issues here. You want to get to those? Oh, well, the civil forfeiture issues deal with a constitutional claim that was brought up in our first error, basically. The government says, look, there's a one-year statute of limitations on an intentional, on a tort of this type of nature of constitutional takings claim. You look at the state law, and then you borrow whatever close cause of action there is in their state law. You borrow that statute of limitations. You import it to the constitutional claim, to the constitutional tort that's being argued in the federal case. That was decided by Judge Helpe early on, and it was brought as a dismissal on the constitutional takings claim. Mr. Pared had a boat. He had two trucks that were forfeited early on through two parallel routes of forfeiture. One was a civil forfeiture under the same title, and that was initiated administratively, and Mr. Pared challenged that. But there were defects in his challenge to that forfeiture. The first defect was that he didn't sign the forfeiture. It was signed by his attorney. Now, the statute allows attorneys to sign, but the other defect that was mentioned there was that he didn't sign it under oath. So then his attorney, which was the civil, his attorney went and provided the missing oath, but he filed it like five days late, and it was denied again. So by that time, Mr. Pared had already been incarcerated for over six months, and he knew nothing further of what happened to that civil forfeiture. But at the same time, there's a criminal indictment, and the criminal indictment, which is count three, it was included in the federal tort claim. So are you conceding that there was procedural error? Well, Your Honor, we're not contesting the civil forfeiture to the extent that the damages were also caused in the criminal forfeiture, the taking of his property. The taking of his property was brought up in count three of the criminal complaint. The court found, initially, after criminal trial, that he had forfeited all his property, up to $4 million. Now, that was vacated by this court by a panel, which included, I believe, one of Your Honors here, and it was vacated and reversed. So the effect of that reversal on the criminal forfeiture is that he was, first of all, he was not guilty on the criminal charges, and he was not guilty on the criminal forfeiture. Then you have inconsistent findings. Didn't the jury make a specific finding as to the forfeiture amount? All three counts, Your Honor, all three counts. There was no specific, yes, the... Wasn't it $20,000? Well, no, the $20,000 was the judge made a, I believe this was my recollection, the judge made a preliminary determination as to an order, a preliminary order of forfeiture right after the sentencing. And there's $20,000 involved in that, in that order. But the count, the guilty, the conviction was for $4 million, not just $20,000. The whole amount of the conviction was up to $4 million. That preliminary order was only to that extent of that preliminary order. But that, okay, so that jury verdict, including the forfeiture count, that's all been vacated. So what does, how does that play into what you are now raising? I mean, that all seems like it's history. It's over. He's not exposed to that forfeiture amount at all because the jury convictions have been vacated. So why does that matter in terms of what you're now asserting? Your Honor, he still doesn't have his property, the property that was forfeited from his civil forfeiture. Now, you can say it's independent, but he's still, the property has still been taken to this day. Those are proceeds. Whatever the government took are proceeds. They sold it and they have proceeds. They have proceeds that were originally taken from Mr. Pared, and you have two inconsistent judgments. One, in a civil forfeiture, saying that property was legally taken from you and we have, because you had criminal activity. The same facts that led to the taking of his property were also vacated by this court in a judgment of not guilty, and he was told, look, that property is yours, and up to $4 million. And that included the proceeds of his civil forfeiture. That's basically, in a nutshell, the argument, Your Honor. What is a constitutional taking sounding in tort? What does that mean? Because you rely on that characterization to avoid the argument that this is a Tucker Act claim. What exactly is that? Well, Your Honor, we have adverse, the tort under Puerto Rico law is very encompassing, and also in common law. It encompasses a lot of wrongdoings, and it also encompasses the taking of your property. There is actually a one-year statute of limitation at the local level in the Puerto Rico law for inverse condemnation proceedings. So if the government takes my property, I don't have to wait for condemnation proceedings to go on. I can actually sue in tort under Pamed versus ELA. Well, we take that back, Your Honor. We don't have the English translation, but it is quoted that in Puerto Rico law, you have up to one year to sue the government in tort for the taking of your property. Now, what I'm saying is, look, under the Wilson case, you look at federal law first. Is there an analog to the taking of someone's property? Yes, the Tucker Act has an analog with a six-year statute of limitations. So if the FTCA allows you to make a claim for the taking of your property, and there's concurring jurisdiction both under the Tucker Act and under the FTCA, well, analogously, look at the federal law. Don't borrow a personal injury one-year statute of limitation. Go to federal law. The Tucker Act says six years, and you don't have to go to state law then to determine what would be the appropriate statute of limitations under the FTCA. I'm confused. If you have an action under the Tucker Act, why aren't you in the wrong court? Well, Your Honor, you have concurring jurisdiction under the case law that we quoted in our reply brief. You have concurring jurisdiction. Obviously, when Mr. Pallet left, if he would have filed a Tucker Act claim, there would have been jurisdiction as long as it didn't sound in tort. Now, as long as it didn't sound in tort, but there are cases that say that if it's tort, but it also contains other elements, that there will be concurring jurisdiction between the court of claims and the FTCA. If we understand there is concurring jurisdiction and he could file in both places, well, he filed in one place, which was his Federal Tort Claims Act case, and that's the case he brought. Counsel, I don't understand. I mean, the Section 1983 claims, based upon a First Amendment violation, Fourth Amendment violation, whatever, we describe those as constitutional torts. It sounds to me like you're characterizing your takings claim as a constitutional tort, and in all those 1983 claims, we always apply the one-year statute of limitations here in Puerto Rico to those constitutional tort claims. Why should it be any different if you have a constitutional takings claim, but you say sounds in tort? Why should the outcome be any different? Well, Your Honor, first, my client did not choose the path of a Bivens claim. He did not choose the path of a 1983. As a matter of fact, he couldn't choose a path because there is no 1983 cause of action against federal agents. He chose a path of invoking the Constitution and under the Federal Tort Claims Act. That was the path he chose. Now, the question is, what would be the statute of limitations for that action? And then if you, well, the Federal Tort Claims Act has its own statute of limitations, but if it's a constitutional tort, such as we understand there is, 1983 is a constitutional tort, but what the court said in the, I believe, the California case, the one we quoted, was that you look at a personal injury claim. A 1983 action is a personal injury claim. This is not a personal injury claim. His property is the one that's being taken. It's not that he was ran over by someone and he's lost his ability to walk. You know, this is really a property claim where he's lost the means of his business, which is basically a little tire shop. That's the, that would be the answer, Your Honor. And none of this is something, none of this is an argument you made below. No, we made these arguments below, Your Honor. You never raised with the district court that the Tucker Act was the analogous federal law that it should look to. Well, Your Honor, the court dismissed the claims early on. The court made that dismissal, and we reserved our right to bring the challenge on appeal, but we also brought it up, Your Honor. No, we argued that dismissal, but we lost it, and then we brought up the argument on appeal. That's basically what our story is. It's a legal determination of the court. I know it wasn't immediately appealable, so we would reserve our right to appeal that. We didn't file a motion for reconsideration invoking the argument, but we did raise it. We raised it when we had to raise it, which is on the appeal. I don't understand that we waived it because we argued against it when we fought the dismissal, that we brought the argument of the legal. You argued that a one-year shouldn't apply, but you never argued that the Tucker Act was the analogous statute of limitations that should apply. That is correct, Your Honor. That is correct. But we understand that we didn't waive it just because we didn't argue that legal theory. That legal theory was argued when it had to be raised, which is on appeal. That cause of action was dismissed about four or five months into the case after Judge Helpe dismissed several of the claims. He dismissed the property claims. He dismissed basically the property claims and I think one of the excessive force claims during their false arrest claims. Counsel, why don't the procedural irregularities that were noted earlier in the administrative forfeiture process, I mean, why don't those preclude you from pursuing that procedure now? I mean, I understand that you feel that in light of the now vacated criminal convictions, your client's property was taken improperly, but the fact is there was in place an administrative forfeiture process. Your client had a chance to challenge the government's effort to take his property through that process. He did not comply with the procedures that that process requires. Why should he now be allowed, in light that his convictions were vacated, why should he now be allowed to pursue that process? Well, Your Honor, for the same reasons that the Criminal Forfeiture Act continued. That is, if the government wants to allow a criminal forfeiture to proceed, the criminal defendant can ask for it to stay, but it's a parallel procedure. It's a parallel procedure that the Supreme Court has allowed. It says it's a different procedure. Well, if it's a different procedure, and it's allowed for, let's say, the government to take your property civilly, what happens if he also does it in the criminal case? And that's what this forfeiture statute is doing in the criminal case. It's basically saying, look, let's try this before the jury, so to add up to the counts on the complaint, while we're trying it on the civil case, on the civil procedure administratively, and then we're going to use whatever findings in the criminal conviction to our favor. Well, if you litigate it, the close analogy would be to rest your decada. If you're allowing this to go on on both sides, well, if you win here, that doesn't mean you can't challenge it if you lose here, and that would be the argument. If it's good for both, it's good for the other side. Thank you. Thank you. Thank you. Mr. Jimenez? Good morning. Good morning. My name is Steve Frank from the Department of Justice. I guess I'm looking at the wrong flurry. That's okay. That's no problem. Good morning, anyway. Good morning to you, Your Honor. And I represent the United States. The district court ruled in favor of the government, and on appeal plaintiff raises three arguments, and I'd like to look at them and consider them separately because it's a little confusing. The three arguments are, number one, he raises a constitutional takings claim. Number two, he challenges, I'm not sure which one, but the forfeiture, either the civil or the criminal. He argues that he's mostly challenging the criminal. And third, a malicious prosecution claim. I'd like to address each of those very briefly. The first one is a constitutional takings claim, and the law is just quite clear that he invoked only, solely, the jurisdiction of the FTCA in this case. The law is very clear that the FTCA does not provide jurisdiction for a constitutional takings claim. That's been made clear primarily in FDIC versus Meyer, and the district court recognized that in AB 86. Again, under very settled law, this court and other courts, we've cited this court's opinions for the proposition, a takings claim asserted against the federal government, the applicable procedure is a claim brought under the Tucker Act in the Court of Claims. So basically that's it for his constitutional takings claim. He's in the wrong court. The second claim, the forfeiture claim, is ‑‑ Excuse me, counsel. He points out this is not an eminent domain type claim where there's a challenge to the amount of compensation that he was awarded, suggesting being that that's what a Tucker claim is all about, and that's not the kind of claim that he's making here, that he's arguing that he was wrongly deprived of his property. This is not a fight over the level of compensation that he got. So why isn't his claim different than the type of claim that the Tucker Act envisions where there may be primarily a fight over the adequacy of the compensation that somebody got through an eminent domain proceeding? Yes, Your Honor. If Your Honor would read the cases cited in our brief or have someone read them, they're not limited to like a lot of people think that the Tucker Act is limited to eminent domain or to contract cases. And that's not necessarily the truth. It's any kind of a takings claim, and it also involves property. Now, I'm not saying, and I want it clear, I'm not conceding that he has a proper Tucker Act claim. I'm just saying to the extent that he is bringing a Tucker Act claim, and I think he virtually concedes in his brief that he is. You can't just borrow the statute of limitations and ignore the rest of it, pick and choose what's favorable to you. He's bringing a Tucker Act claim, whether or not he has. Yes, Your Honor. So the Tucker Act specifically says for cases not sounding in tort. Correct. And this, as you said, is more or less a constitutional tort. His claim is more or less a constitutional tort. So how is Tucker Act's specific disclaimer of not presiding over cases not sounding in tort, what is the argument that that's the proper venue to inform? It's up to the court, not plaintiff, to characterize the case. And the cases are clear that if it's a constitutional takings claim, okay, whatever the person characterizes it, if it's a constitutional takings claim, which is what he's alleging here, that that belongs under the Tucker Act. He can argue all day that it's a tort, but that doesn't deny the fact that it's a constitutional takings claim. If he really believed that it was a tort, then plaintiff would have alleged a tort. He would have alleged some tort under Puerto Rican law, for example, conversion, but he did not do that in either his complaint or any of his pleadings. He did not allege in this part, the constitutional takings claim, that it was some comparable Puerto Rican tort. I gather you are acknowledging that the application by the district court of the one-year statute of limitations was in error. The case was properly dismissed, but it should have been on this Tucker Act basis, not on the application of the one-year statute of limitations. We are not necessarily, Your Honor, confessing error. In fact, plaintiff seems to imply that inverse condemnation was an appropriate application. I think Your Honor suggested that it might be an appropriate application. We would have no problem if the court were to affirm it on that ground. Plaintiff raised the Tucker Act for the first time, as Your Honor pointed out, in his opening brief. We ran with that. We said, okay, there's grounds for the district court's decision based upon the one-year inverse condemnation. But it really seems, plaintiff seems to be right. It does seem to fit more into the Tucker Act, which we lose on the statute of limitations issue, but we win on jurisdiction that he's in the wrong court. And if he were in the right court, probably wouldn't have a claim. So this court can affirm on the basis of the district court. We're not confessing error. We simply say probably a better ground, it's an alternative ground for affirmance, would be the Tucker Act. On the forfeiture, that's even more puzzling. And I had a lot of time difficulty trying to figure out exactly what was going on. Here to the best of my ability is what I think plaintiff is arguing. He's challenging the forfeiture. But as the court recognizes, there were two forfeitures in theory, only one of which was actually acted upon. You had the administrative forfeiture that forfeited his cars and his vessel. That took place. And plaintiff seems to recognize that took place because on Act 59, it's part of his administrative claim. So in his administrative claim before the FTCA, he seems to be challenging the administrative forfeiture. With regard to that, plaintiff failed, as your honor pointed out, to file a timely claim. And plaintiff concedes that he failed to file a timely claim. The district court ruled on the basis of the administrative claim that he failed to file a timely claim. So that's not really before this court. Because the way I read it, I could be wrong, and I stand prepared to be corrected. It seems to me that before this court, plaintiff is primarily trying to challenge the criminal forfeiture. That's what I get from reading his brief. The plaintiff is correct that in the judgment, the criminal conviction, there was a count three of a criminal forfeiture for $20,000. He's totally correct about that. However, your honor is correct that when his conviction was vacated, that forfeiture was also vacated. It became null and void. And we are advised by the U.S. Attorney's Office here in Puerto Rico, that that $20,000 judgment was never satisfied. And plaintiff has not come forward in the district court or here with any evidence that it ever was satisfied. I gather what he's saying, and it is a little bit confusing, is that in essence, even though there's a civil and a criminal forfeiture proceeding, that they're legal fictions. And that bottom line is that he lost his property as a result of a criminal proceeding in which he was later vindicated on appeal. And that the criminal judgment, forfeiture judgment, even though it may not have been specifically satisfied out of any separate assets, that it was in fact satisfied out of the property that was seized as a result of the drug charge in the civil proceeding. So he's saying that we should look at the property that was seized civilly and attribute it to being satisfied in a proceeding that was later vacated. That's... Your Honor, that makes sense. That explains to the best I can see of what he's trying to say. However, with all due respect to Your Honor, I don't think this is Your Honor positing, and I think it's you're positing what you think plaintiff is saying, that would be incorrect. And the reason is they are two separate proceedings that have nothing to do with each other. For example, the civil administrative forfeiture, as we point out in footnote, I believe it's six of our brief on about page 20-21, does not depend upon a conviction. So the fact that his criminal conviction was overturned... But it does depend on some kind of criminal investigation. You don't just start forfeiture proceedings based upon nothing. That is totally correct. But the fact that his criminal conviction was overturned has no effect whatsoever upon the civil asset forfeiture. Civil asset forfeitures, and there's a lot of controversy about them. Yes, Your Honor. Absolutely. No question about it. And, of course, the remedy for that is for Congress to fix it. But it's very controversial, but it does not depend upon a conviction. What is the determination that a court has to make to provide for the civil forfeiture? I mean, it has to have some grounding in the alleged criminal activity, does it not? Yes. I mean, I don't have the statute here in front of me recited, but it has to just find some nexus between the object. And it's very complicated. Civil asset forfeitures are in rem proceedings based upon old admiralty law. So it's an in rem proceeding where the criminal forfeiture is in persona. But it has to be some direct nexus between the property, the car, the vessel, and some criminal activity. For example, drugs in the car, something like that. It's very, very low standard. But, again, that footnote shows that there is no connection whatsoever between you don't need a conviction. You do not need a conviction for civil asset forfeiture. That's what happened here. But the most important point that the court needs to know about this is that Plaintiff A was untimely in challenging the civil asset forfeiture. The court ruled he was untimely. Plaintiff does not challenge that ruling on appeal. He makes no challenge to his civil asset forfeiture, except to say that his conviction was overturned. And, thus, his criminal forfeiture, which was never satisfied, no money was taken from him, should be overturned. And then he seems to be going forward further, as Your Honor seems to indicate, and saying somehow that should affect his civil asset forfeiture, which there's no basis for that. Well, I think as Judge Thompson as well indicated, I mean there is a certain fairness appeal to his argument. I mean we have a civil forfeiture grounded in allegations of criminal conduct. Later, those criminal convictions are vacated. And yet he seems to have, from your arguments, no remedy for property of his that was taken on the basis of some nexus to criminal activity. I mean that is a bit unsettling. There's something unfair about that, so it would seem. And if I might just add on to what Judge Lopez was saying, the example you give, drugs found in the car, if there's a car with drugs, I mean I can see that as a nexus, but the conclusion of the criminal proceedings was that there was no conspiracy because of his boasting to nothing but federal agents. So there were no drugs. There was no conspiracy. There was nothing tangibly illegal about anything to connect the taking of his property to. So it's unsettling. It is unsettling. It is unsettling, and one should take it up with Congress because one thing I want the court to understand is that there is no connection between the two. You do not have to be convicted in order to have a civil asset proceeding. So wasn't it always in the government's interest in situations like this to pursue a civil forfeiture to protect itself against the very eventuality that we see here that the criminal conviction, including allegations of criminal forfeiture, could be, you could lose it. You could lose the case at trial or it could be overturned on appeal. But if the civil forfeiture has been completed, you have nothing to worry about. All plaintiffs had to do, and he was represented by counsel at the time, was file a timely claim. By filing a timely claim, that would have converted his civil administrative forfeiture, which is just the agency saying, okay, we're going to take this. They would have had to refer that to the U.S. Attorney's Office, and it would have become a judicial forfeiture, providing more due process. Plaintiff failed to do that, and he admits that he failed to do that. If there are no further questions, I thank the court. Thank you.